BRIGGS, Appellant, v. BRIGGS et al., Respondents

(45 N. W.2d 62)

(File No. 9122. Opinion filed November 28, 1950)

**Miller, Kaye & Hanson** and **Fellows & Fellows,** all of Mitchell, for Plaintiff and Appellant.

**Palmer & Palmer,** Woonsocket, for Defendant and Respondent.

SMITH, J.   Whether language which otherwise would describe a fee absolute is restricted to a life estate by subsequent expressions contained in the will presented for construction is the question we are to consider.

The plaintiff, Alfred I. Briggs, is a son of Claude Briggs and the grandson of the testator, Ireson F. Briggs.   Resting his claims upon the provisions of his grandfather's will, the plaintiff claims title to an undivided interest in 640 acres of Sanborn County land described in the sixth provision of that will.

The testator, Ireson F. Briggs, settled on a farm in Sanborn county in 1880.   His wife died in 1899.   He and their three children Claude, Addie and June carried on together; Claude assisted with the operation of the farm and the girls with the care of the home.   Claude and Addie married in 1913.   The will was made earlier that year, the testator then being of the age of about 54, and his children of the respective ages of 25, 23, and 19.   The will reads as follows:

"In the name of God Amen

I, Ireson F. Briggs of the township of Oneida the county of Sanborn in the state of South Dakota being of sound mind and body and realizing the uncertainty of this life * * * Do hereby publish, declare and proclaim this instrument to be my last will and testament Follows to wit

"First

"Before there is any some paid to any of my heirs I desire that all of my just debts and my funeral expenses be paid

"Second

"I have a life insurance on my life which consists of two thousand dollars in the Modern Woodman lodge of America. This I will to my two daughters share & Share alike June E. Briggs & Addie B. Briggs

"Third

"I also will to my daughter Addie B. Briggs in addition to her share of my life insurence The following described ¼ sec. . of land The S-W-¼ of Sec. .24-108-61—In Jackson Township

"Fourth

"I will to my daughter June E. Briggs in addition to her share in my life insurence the following described ¼ sec of land The S-W-¼ of Sec-1-107-61-. In Silver creek Township

"Fifth

"I will to both of my daughters Addie B. Briggs & June E. Briggs the following described ¼ sec of land The N.W-¼ of Sec. .31-108-60 In Floid township I will that they shall share equal in this piece of land share & share alike

"Sixth

'I will to my Son Claud D. Briggs The following Described land The West ½ of the N-E ¼ of sec 6 Oneida Township & the East ½ of N-W-¼ of sec 6 Oneida Township & the West ½ of N-West-¼ of sec 6 Oneida Township Which constitutes three eighties of land in sec. 6- Oneida township Sanborn Co., So. Dak. I also will my son Claud D. Briggs The East ½ of N-W ¼ of sec-1-107-61 in silver creek Twp. & the West ½ of N-E ¼ of sec. 1-107-61 in silver creek Twp. & the E ½ of the N.E.¼ of sec. 1-107-61 in silver creek Twp. consisting of thre eighties in sec. 1. Silver Creek Twp. in Sanborn Co. So. Dak.

"I also will my son Claud D. Briggs The S.W. ¼ of sec. 31-108-60 in Floid Township Sanborn Co. So. Dak.

"This makes a section of land willed to My son Claud D. Briggs I also will to my son Claud D. Briggs All of the personal property on my farm at the time of my death so he may have So that he will have the section of land the stock teams tools & everything in tact as I have had it

### "Seventh

"I have two notes of $1,000 each given to my daughters one for $1,000 to Addie B. Briggs & one for $1,000 to June E. Briggs. In case these notes are not paid before my death I hereby provide and require my son Claud D. Briggs to pay these notes out of his share of the estate as he has received more of my estate than my daughters have received under the provision of my will. These notes are in my deposit box in the citizens bank of Woonsocket and are on demand

### "Eight

"I want it plainly understood that all of this land mentioned in this will is in Sanborn Co. . South Dakota. . And I also want it plainly understood that none of my heirs mentioned in this will can sell or dispose of the land given to them in this will unless they are actually obliged to for their support The intention of this clause is to have the land which I have given to my heirs in this will to remain in their possession during their life so they can have homes and a living during their life and leave homes to their children as I have left homs to them In case any of the heirs mentioned in this will actually need any of the proceds of this land for their support they can sell any part of it But they must have the consent of the other heirs mentioned in this will and they must agree that it is necessary for the support of the heir that is to sell the land

### "Ninth

"I also will and direct in case of the death of one of the heirs mentioned in this will without issue which shal be a living child the other heirs mentioned in this will shal inherit their share of the estate will to the deseased heir share and share alike But in case of a living issue child or children I will that they or them inherit their parents portion of the property they receive under the provision of this will.

### "Eidhth

"I hereby appoint all three of my children executors of this my last will and testament without bonds That this will is written in my own hand writing every word being written by me

"In Testimony Where Of I hereunto subscribe my name and affix my seal this 18th day of March A.D. 1913

Ireson F. .Briggs"

In 1918 the testator made the following codicil to his will: "Codicile to my last will and testement Having sold the S.W.-Sec-24- Town-108-R-61- which was willed in this will to my daughter Addie B. Briggs now Addie Judy for the sum of $8800 I hereby in liw there of devise and bezuethe to my said daughter Addy Judy the sum of $8800 to be paid out of any money or personal property on hand at the time of my death if there is not sufficient money and personal property on hand to pay the same it shal be paid out of the realestate that has been in this will to my son Claud Briggs and is to be paid within five years But said amount shall bear interest at five per cent after my death

"Dated at Woonsocket So. Dak. May 1st 1918.

I. F. Briggs"

Thereafter the testator retired and moved to California, leaving the farm in Claude's hands. In 1922 he died and the will was probated in California and South Dakota. The proceedings describe the property listed in the will and codicil and additional property in California. The California estate was valued at about $18,000. The decree in the proceedings in South Dakota purported to distribute the 640 acres described in the sixth provision of the will to Claude in fee. Plaintiff, a son of Claude, was two years old when his grandfather died.

Claude died testate in 1944. He was survived by the defendants Helen W. Briggs, his widow, and their daughters Margaret Ann Briggs and Claudia Leone Briggs, and by plaintiff, his son, by his first wife. The final decree in his estate distributed all of his property in accordance with his will to defendant Helen W. Briggs.

Thereafter this action was brought by plaintiff to quiet title to an undivided interest in the 640 acres of land described in the sixth paragraph of the will of his grandfather. Because of alleged defects in the probate of the wills of his grandfather and father, respectively, plaintiff asserts that

he is not bound by the decrees of distribution entered therein. According to plaintiff's construction of his grandfather's will, it devised the section of land to his father, Claude, for life, with remainder over to his three surviving children, Margaret Ann Briggs, Claudia Leone Briggs, and plaintiff. Plaintiff's contention is that although the sixth provision of the will is sufficient, standing alone, to create a fee absolute in his father Claude, the subsequent expressions of the eighth and ninth provisions restrict his father to a life estate, and vest a remainder in fee absolute in the three children, his surviving issue. The trial court concluded that the ninth provision of the will was substitutional in character, and that the testator intended to devise a fee absolute to Claude.

Stated in different terms, the question presented by plaintiff is whether the testator by the ninth paragraph of his will intended a substitutional provision to be effective if any of his children failed to survive him, or a successive provision for contingent remainders over at the death of each child.

▆▆▆ The sole purpose of the process of construction is to discover the intention of the testator. If that intention is clearly revealed by the language of the will, when read in its entirety in the light of the circumstances of its formulation, it will be declared. If after its language is so considered, doubt remains as to the meaning the testator sought to express, his intention will be determined by reconsidering his entire language and the circumstances surrounding the making of the will in connection with established canons of constructional preference. The intention of the testator having been determined there remains the question whether restrictive rules of law render it ineffective in any respect. SDC 56.03; Hill-Taylor Co. v. Shade, 57 S.D. 357, 232 N.W. 89; Parker State Bank v. Fields, 69 S.D. 605, 13 N.W.2d 302; In re Barrett's Estate, 70 S.D. 475, 18 N.W.2d 787; Restatement, Property, §§ 241, 242 and 243.

▆▆▆ Technical words are not a requisite of a devise of a fee absolute. SDC 56.0312. The dispositive words "I will" employed by the testator in the second, third, fourth,

fifth and sixth provisions of this will, in the absence of context indicating a different intention, would be held to devise his entire estate, which in this case was a fee absolute. SDC 56.0312. As we have indicated, plaintiff concedes that, standing alone, the foregoing expression would devise such a fee. So we pass on to the context which is said to reveal a different intention.

The language from which counsel reads an intention to restrict Claude and his sisters to life estates is contained in the eighth and ninth provisions of the will. It is said that a guide to accurate construction is found in the third sentence of the eighth provision reading as follows: "The intention of this clause is to have the land which I have given to my heirs in this will to remain in their possession during their life so they can have homes and a living during their life and leave homes to their children as I have left homes to them." We are told that when this sentence is read in connection with the whole of the ninth provision of the will, a dominant purpose emerges to keep the lands described in the family for the benefit of the testator's descendants. The quoted sentence conveys a different meaning to our minds.

The will must be read as a whole in the light of the circumstances of its making and the quoted sentence must be read against that background. The testator who had never experienced a grandfather's love was writing his own will while his three children, to whom he had been both father and mother, and who had been his helpers, were yet with him. He had said "I will" without limitation and had proceeded to divide his estate in three shares. As he wrote on he referred to the "share of the estate" and explained he wanted Claude to have certain personal property "So that he will have the section of land the stock teams tools & everything intact **as I have had it**". Having made these gifts, he then sought to limit the power of his children to dispose of the lands devised except in case of need of the proceeds for their support. He thought this called for an explanation and in substance he said, "I have limited your power to sell the lands I have given you so that you will be assured of a home during your life, and to make it possible for you to '**leave homes**' to your children as '**I have left homes**' to you." More

than the testator's reason for restraining the power of his children to alienate the lands described is explained by these words: that he intended to devise the title he had is thereby made as clear as though he had used technical words of inheritance in connection with the words, "I will". Only by such a devise would he make it possible for them to leave homes to their children as he had left homes to them. If the will had closed with the eighth paragraph the actual intention to devise a fee simple would have been placed beyond all reasonable question.

■ ■ If the testator's intention is obscured, it is the ninth provision of this will which introduces doubt. By its terms and according to our statutes those who are described therein take as donees or purchasers directly from the testator. SDC 51.0420 and 56.0319. If this was intended as a successive, as distinguished from an alternative or substitutional provision, it operates to restrict the previous devises to the testator's children to life estates. Death, with or without living issue, was certain to come to each of the testator's children and hence, by reason of this provision each child's estate would divest at death. Such an estate is for life. SDC 51.0420. Cf. 7 U. of Chi.L.Rev. 587 at 616. But to adopt such a successive construction brings this provision into collision with the intention so clearly expressed by the earlier language of the will we have considered.

A rule of constructional preference indicates the conclusion we should reach. By SDC 56.0305 it is provided, "All the parts of a will are to be so construed in relation to each other, as, if possible, to form one consistent whole but where several parts are absolutely irreconcilable, the latter must prevail."

■ In view of the certainty with which the testator has expressed an intention to make absolute devises and bequests to his three children, the ninth provision of his will can only be reconciled therewith if it be construed as substitutional in character, that is, as operative only in case any of the three children failed to survive the testator. So construed not only is the conflict to which we have made reference avoided, but the will becomes consistent in all of

its parts and with the circumstances surrounding its formulation; so construed the will is in keeping with this father's love and concern for his children.

The ninth provision comprehends personal property as well as real property, and if it restricts the previous gifts to life estates, it create estates of that character in personal property. Because it seems highly improbable that this testator would intend to limit his three children to life estates of that character or that he would intend even potentionally to charge a mere life estate in Claude's share of the estate with the payment of a total of $9800 to Addie, and $1000 to June, or that, without any character of trust to protect remaindermen, he would intend to create a life estate in personal property including considerable sums of money, comprising by possibility the proceeds of the sale of lands under the power of sale contained in the eighth paragraph, our conviction that the ninth paragraph is substitutional in character is strengthened.

Such a substitutional construction is supported by authority. Predicated upon cases collected in Lumpkin v. Lumpkin, 108 Md. 470, 70 A. 238, 25 L.R.A.,N.S., 1100, it is written in 57 Am.Jur.Wills, § 1244, p. 823, "A well-developed exception to the rule which considers the gift over effective upon the death of the first taker without issue, whenever it may occur, exists where a gift in absolute terms is followed by limitations over, both in event of death leaving issue and in event of death without issue. The theory is that, as the first taker is bound to die either with or without issue, it is necessary in order to give due effect to the words of absolute gift to restrict the contingencies to the period before the primary gift takes effect."

"In Restatement, Property, § 263, Comment i, it is written,

"A limitation can contain two or more clauses, which, taken together, make a disposition of the thing in question upon all the circumstances possible at the time of the death of the person to whom a purportedly absolute interest has been limited. Thus Blackacre may be devised 'to B absolutely, and if B dies with issue to such issue, but if B dies with-

out issue, then to C absolutely.' Such a limitation is construed in accordance with the same substitutional rule as is stated in this Section." And see § 267 Comment g.

In 7 U. of Chi.L.Rev. 587, at 617, Prof. Merrill I. Schnebly writes:

"Where, however, the estate of the first taker is expressly described as a fee simple by use of the words 'and his heirs,' 'in fee simple,' 'absolutely,' or some equivalent terms, a difficulty arises. The devise of an express fee simple is inconsistent with limitations over on death of the first taker which necessarily terminate his estate at his death. While it may. be theoretically possible to create a fee simple defeasible in any event at the death of the owner thereof, it is not believed that a conveyor would normally attempt to create such an estate. If it is possible to reconcile the apparently inconsistent limitations by a reasonable construction, that construction should be adopted. One possibility of reconciliation is apparent. If the limitations over to the surviving issue, and in default thereof to B, are construed to refer only to a death of the first taker within some limited period of time, they become perfectly consistent with the language indicative of a fee simple in the first taker. * * * In the case of a will, the gifts over can be construed to refer only to death in the life of the testator, thus conferring upon the first taker an indefeasible fee simple if he should survive the testator."

■ The language of the will and the circumstances surrounding its formulation convince us that Ireson Briggs intended absolute gifts to such of his children as survived him. It follows we are of the opinion that the trial court did not err in concluding that plaintiff had failed to establish title to the property he claims.

It is our view that there is a sufficient variation in language and in the circumstances which shed light on the real meaning of the testator to distinguish this case from In re Estate of Merrigan, 34 S.D. 644, 150 N.W. 285, so earnestly urged upon us. These two cases but emphasize, the much repeated statement that "no will has a brother" and point up the fact that if a testator's intention is to prevail, preced-

ents cannot be accorded too great an influence in the construction of his will. 57 Am.Jur.,Wills § 1123, p. 717.

The judgment of the trial court is affirmed.

All the Judges concur.