NORTHWEST SECURITY NATIONAL BANK OF SIOUX FALLS, Sioux Falls, South Dakota, and Robert W. Best, as trustees of the Esta Sharp Best and the Fred V. Best Trusts; Fred V. Best and Robert W. Best, as executors of the Last Will and Testament and estate of Esta Sharp Best, deceased, Plaintiffs,

v.

W. C. WELSH, as Collector of Internal Revenue of the United States of America within and for the District of South Dakota, Defendant.

Civ. No. 1265.

United States District Court
D. South Dakota, S. D.
March 9, 1962.

T. R. Johnson, Sioux Falls, S. D., for plaintiffs.

Stephen H. Anderson, Dept. of Justice, Washington, D. C., for defendant (Harold C. Doyle, U. S. Dist. Atty. for Dist. of South Dakota, Sioux Falls, S. D., on the brief).

MICKELSON, Chief Judge.

In 1954, testatrix, one Esta Sharp Best, who died on December 8, 1957, employed attorney Fred G. Warren, who is also now deceased, to draft her will. That will is the focal point of this controversy.

The will sets up two trusts, the first of which is designated in the will as the "Fred V. Best Trust." It is under this trust that a marital deduction is claimed by the taxpayers, plaintiffs herein, and which trust embraces a large portion of testatrix's estate. The second trust deals with most of the remainder of the estate, but is not material to this case.

In regard to the Fred V. Best Trust (which will hereinafter be referred to as "the trust"), the will provides, in paragraph II B.1.:

"My Trustees shall pay over and distribute the entire corpus of the Fred V. Best Trust, or the part thereof then remaining, to such person or persons including his estate, in such manner as my said husband may appoint to receive the same by his Last Will and Testament, which general testamentary power of appointment hereby is given and granted unto him and shall be exercisable by him alone and in any event."

However, in paragraph II B.2., immediately following the above-quoted provision, it is stated:

"My Trustees shall cooperate with such person or corporation that shall be responsible for the payment of inheritance and estate taxes on the estate of my husband, * * * and after the payment of such tax or contribution * * * the Trust assets, as then constituted, shall be divided into two (2) equal parcels which shall be disposed of as follows: * * *." (Following are detailed directions for distributing the trust assets to testatrix's children.)

As may readily be seen, the two provisions quoted create a conflict as to whether testatrix's surviving spouse was to have the power of appointment over the trust assets, a necessary element for a valid marital deduction trust. 26 U.S. C.A. § 2056(b) (5).

Testatrix died on December 8, 1957, leaving a gross estate of over $450,000, her will was subsequently admitted to probate, and a Decree of Distribution later entered. On March 9, 1959, taxpayers filed a timely Federal Estate Tax return, claiming a marital deduction under the trust, and a few days later, paid the amount they had calculated to be due —$55,468.35. However, the Collector of Internal Revenue (hereinafter referred to as "the government") disallowed the marital deduction and assessed a timely deficiency in the amount of $47,554.74. Taxpayers have paid this deficiency which, together with interest, totaled $52,825.39, and this action is for refund of such payment, with interest.

Sometime before the payment of the deficiency and claim for refund, an action was commenced in the Circuit Court of South Dakota. In that action, the plaintiffs, Northwest Security National Bank and Robert W. Best, son of the testatrix, as trustees, and Fred V. Best, husband of the testatrix, and Robert W. Best, as individuals, asked for a declaratory judgment construing the above-quoted conflicting provisions of the will. The defendants in that action were the

daughter of testatrix, Beverly Best Beecher, and her children, Robert Best Beecher and Janet Louise Beecher. The action was brought under the Uniform Declaratory Judgments Act, SDC 1960 Supp. 37.01. Both plaintiffs and defendants were represented by able counsel. The parties stipulated that the facts stated in the complaint were true, and submitted the matter to the court for decision. Two briefs were presented on behalf of plaintiffs, but there is no evidence that defendants submitted any brief.

In November, 1960, the Circuit Court of South Dakota entered its declaratory judgment, construing the will as giving testatrix's husband the power of appointment, and construing paragraph II B.2. "as substitutional, effective only if the power in the prior clause was not exercised."

Taxpayers then paid the alleged deficiency, and began the present action, claiming that the assessment of the deficiency "was erroneously made and illegally exacted," that such exaction was based upon an erroneous and illegal interpretation of Sec. 812(e) (1) (B) and (D) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 812(e) (1) (B, D) (now Sec. 2056 Internal Revenue Code of 1954, 26 U.S.C.A. § 2056), that the will should be construed as granting to testatrix's husband the power of appointment, and that the state court declaratory judgment construing the will is binding upon this court.

The government denies the alleged validity of each of these grounds for recovery, and both sides have agreed to submit the case for decision of this court upon a stipulation of the facts and certain exhibits.

The first issue which requires our consideration concerns the effect of the state court declaratory judgment construing the will. Taxpayers contend that the state court determination settles the matter of their tax liability, forecloses such issue, and is binding on this court in this action. The government contends that the state court's adjudica-

tion has no binding effect on this court, because it was nonadversary and collusive. The state court's declaratory judgment construed the will as giving decedent's surviving spouse a power of appointment and, if binding upon us, is determinative of the tax question here presented.

The construction of a will is a matter of state, not federal law. Uterhart v. United States, 240 U.S. 598, 603, 36 S.Ct. 417, 60 L.Ed. 819 (1916). A matter of state law decided by a state court of competent jurisdiction determines the rights of the parties and is, to that extent, conclusive on the matter of tax liability. Uterhart v. United States, supra; Freuler v. Helvering, 291 U.S. 35, 45, 54 S.Ct. 308, 78 L.Ed. 634 (1934); Blair v. Commissioner, 300 U.S. 5, 9–10, 57 S.Ct. 330, 81 L.Ed. 465 (1937); Eisenmenger v. Commissioner, 8 Cir., 1944, 145 F.2d 103, 106–107. However, where the state court judgment was obtained through collusion for the purpose of avoiding tax liability, it has no binding effect on the government. Blair v. Commissioner, supra; Eisenmenger v. Commissioner, supra; Botz v. Helvering, 8 Cir., 1943, 134 F.2d 538.

It is therefore necessary for us to determine whether the state court judgment here involved was collusive. To this end, the court has made a thorough search of the many cases which have dealt with this point, and admits to considerable uncertainty as to the present state of the law. All the modern cases appear to agree that a judgment obtained through collusion is not binding in a situation such as this. However, the uncertainty exists with regard to the precise definition of the word "collusion," and with regard to the elements of proof necessary to show that a judgment was obtained through collusion. The Supreme Court of the United States apparently has never defined the term. The Circuit Courts of Appeal for the 5th, 9th and 10th Circuits appear to treat the word "collusive" as synonymous with "nonadversary." Stallworth's Estate v. Commissioner, 5 Cir., 1958, 260 F.2d 760, 763; In re

Sweet's Estate, 10 Cir., 1956, 234 F.2d 401; Newman v. Commissioner, 9 Cir., 1955, 222 F.2d 131. There is authority that, to be collusive, a suit need be non-adversary only " * * * in the limited and special sense that all parties joined in the submission of the issues and sought a decision which would adversely affect the tax rights of the government." Newman v. Commissioner, supra. However, the Circuit Court of Appeals for the 3rd Circuit, in Gallagher v. Smith, 1955, 223 F.2d 218, fully discussed all aspects of the problem, and concluded that the non-adversary nature of the proceedings and the fact that all litigants may desire the same result are mere badges of collusion, not conclusive proof thereof.

The Circuit Court of Appeals for the 8th Circuit has apparently preferred to treat the problem on the basis of a case-by-case adjudication, and has not handed down any general definition of "collusion." Botz v. Helvering, supra, announced the rule that a state court judgment obtained through collusion is not binding on a federal court in determining a tax controversy. In Eisenmenger v. Commissioner, supra, the court rejected a contention that a state court judgment was collusive. The only other 8th Circuit cases of which we are aware, Doll v. Commissioner, 8 Cir., 1945, 149 F.2d 239; Helvering v. Rhodes' Estate, 8 Cir., 1941, 117 F.2d 509; and Mississippi Valley Trust Co. v. Commissioner, 8 Cir., 1934, 72 F.2d 197, have found it unnecessary to deal with the issue of collusion.

■ The law presumes that court proceedings are regular and valid, and the burden of proving that the state court judgment was collusive rests on the government. 20 Am.Jur. 149; 31 C.J.S. Evidence § 145, p. 792 et seq.

■ The government argues that the collusive nature of the state court proceeding is shown by the following facts. All parties to the state court action benefited financially by the judgment there obtained. The defendants admitted the allegations of the complaint. The defendants did not appear in person before the court, and apparently submitted no briefs. There is no evidence that any testimony was offered by either party, and no appeal was taken from the declaratory judgment. The state court action was commenced after the parties were given notice of the disallowance of the marital deduction.

Although we give due weight to the facts thus stressed by the government, we do not deem them sufficient to sustain the government's burden of proof.

The state court declaratory judgment appears to be based wholly upon a matter of law—the construction of the will—and evidently there was no useful purpose to be served by the presentation of oral testimony. The fact that no denial was made of the facts alleged in the complaint seems similarly insignificant. The complaint merely alleged the essential facts, pointed out the inconsistency in the will, and prayed for a judicial construction of the will giving the surviving spouse the power of appointment. Nor do we attach great significance to the facts that the defendants in that action neither appeared before the court, submitted authority to the court, nor appealed from the court's judgment, because "if the questions are fairly posed to the court and the tribunal is left free to decide them according to its own independent judgment it should not be necessary for the parties to take formal adversary positions and engage in legal shadow boxing in order that the judgment of the court should have conclusive effect * * *." Gallagher v. Smith, supra, 223 F.2d at 225.

Counsel appeared both for plaintiffs and for defendants in the state court proceeding. The judgment of the state court "purports to decide issues regularly submitted and not to be in any sense a consent decree." Freuler v. Helvering, supra, 291 U.S. at 45, 54 S. Ct. at 312.

Moreover, South Dakota cases have established the rule that a proceeding for a declaratory judgment must be based on a justiciable controversy between parties having adverse interests in the mat-

ter with respect to which the declaration is sought. Danforth v. City of Yankton, 71 S.D. 406, 25 N.W.2d 50 (1946); State of North Dakota ex rel. Strutz v. Perkins County, 69 S.D. 270, 9 N.W.2d 500 (1943). It must be assumed that the state court was aware of this rule and would not have entertained a nonadversary proceeding. The record shows that the state court was also aware of the tax consequences involved. In the absence of evidence more clear and convincing than the government has been able to present, we cannot bring ourselves to indict the learned state court judge with such serious charges as failing to follow the law of his state and entering a collusive judgment which would result in a fraud on the United States.

 It must be noted that there existed a valid motive, aside from the tax implications, to prompt the parties to seek a construction of the will. The status of the trust assets on the death of the surviving spouse would be of no little concern to the parties. See: Eisenmenger v. Commissioner, supra. The action in the state court was an action in rem, DeKorwin v. First Nat. Bank of Chicago, N.D., Ill., 84 F.Supp. 918, 924, modified, 7 Cir., 179 F.2d 347, and the Commissioner of Internal Revenue was not an interested party. Eisenmenger v. Commissioner, supra. The state court judgment conclusively determined the rights of the parties in the trust assets. See: Sharpe v. Commissioner, 3 Cir., 1939, 107 F.2d 13.

We conclude that the government has not sustained its burden of proving that the state court judgment was obtained through collusion. Hence, the state court's determination that the surviving spouse was given the power of appointment is binding upon this court, and the effect of this is to entitle taxpayers to claim the marital deduction for estate tax purposes.

The conclusion thus reached makes it unnecessary for us to proceed to the second issue and make our own determination of the proper construction of the will. However, we consider it important to make clear our position that even if the state court judgment were not binding upon us, we construe the will as giving the surviving spouse the power of appointment.

Many cases involving the construction of wills have been cited by counsel, all of which have received our thorough consideration. However, except for one or two cases, no helpful precedents analogous to the facts in this case have been found.

The rules for construction of wills have been codified in the State of South Dakota. Those rules which we deem of importance in deciding this issue are:

"A will is to be construed according to the intention of the testator. Where his intention cannot have effect to its full extent, it must have effect as far as possible." SDC 56.-0301.

"In case of uncertainty arising upon the face of a will, as to the application of any of its provisions, the testator's intention is to be ascertained from the words of the will, taking into view the circumstances under which it was made, exclusive of his oral declarations." SDC 56.0302.

"All the parts of a will are to be so construed in relation to each other, as, if possible, to form one consistent whole but where several parts are absolutely irreconcilable, the latter must prevail." SDC 56.-0305.

"The words of a will are to receive an interpretation which will give to every expression some effect, rather than one which shall render any of the expressions inoperative." SDC 56.0309.

██ The primary rule of construction, of course, is that the intention of the testator must prevail. Briggs v. Briggs, 73 S.D. 500, 45 N.W.2d 62 (1950). To assist the court in determining the intention of the testatrix, Mrs. Best, there is available the will itself and a

letter concerning the will, which was written to her by her attorney shortly before the will was executed.

Because of the uncertainty arising upon the face of the will in regard to the provisions thereof which we have previously quoted, we turn to the letter from testatrix's attorney for insight into the circumstances under which the will was made. SDC 56.0302, supra. This letter obviously was written subsequent to consultation between testatrix and her attorney, and we think it only reasonable to assume that the matters therein discussed reflect the intentions of testatrix as she undoubtedly revealed them to her attorney. In pertinent part, the letter reads as follows:

"Paragraph II in the will is the provision setting up the marital deduction and is a tax savings device. It is * * * largely in statutory language taken from the Code of Internal Revenue in compliance with the statutory requirements. This continues through B.1. on page 2 * * *.

"Paragraph II eliminates all of the property included in Paragraph II from taxes in your estate at the date of your death, and saves many thousand dollars of tax * * *.

"It will be necessary to redraft Fred's will to specifically state in his will that he is not exercising any power of appointment * * *.

"This device actually increases the tax on Fred's estate ever (sic) what it would otherwise be; but it reduces the tax on your estate much more than it increases the tax on his. Consequently, there is a very definite over all savings of many thousand dollars. It also divides the time of payment between the date of death of yourselves respectfully (sic)."

This letter would clearly indicate that testatrix intended to use the marital deduction to avoid taxes. Although the idea of taking advantage of the marital deduction may have originated with her attorney, testatrix is presumed to have read and understood the contents of her will. In re Rowland's Estate, 70 S.D. 419, 18 N.W.2d 290 (1945); In re Estate of Klein, 241 Iowa 1103, 42 N.W.2d 593 (1950), and would not have executed it unless she agreed with her attorney and adopted his suggestions in regard to the marital deduction.

The government in its brief quotes from the letter the following sentence: "It will be necessary to redraft Fred's will to specifically state in his will that he is not exercising any power of appointment," and then argues that this sentence shows that "the gift of powers provision in decedent's will was a *sham* and a *nullity*, placed in the will as an empty form, a meaningless incantation designed to detour tax dollars * * *." Here, we think the government confuses *intention* with *motive*. While testatrix may have had a *motive* to save taxes, her *intention* was to give her surviving spouse the power of appointment. If it had not been the intention of testatrix to give her surviving spouse the power of appointment, why would it "be necessary to redraft Fred's will to specifically state in his will that he is not exercising any power of appointment"? Testatrix and her attorney would have been concerned over the exercise of the power of appointment only if they were intending to grant such power.

The provision in the will which creates the trust here involved clearly demonstrates a dominant intention of the testatrix to take advantage of the marital deduction. Such provision reads as follows:

"II.

"I give, devise and bequeath to ROBERT BEST and NORTHWEST SECURITY NATIONAL BANK OF SIOUX FALLS, a banking corporation of Sioux Falls, South Dakota, IN TRUST NEVERTHELESS, an amount equal to fifty per cent (50%) of the value of my adjusted gross estate as finally determined under the Internal Revenue Code for Fed-

eral Estate Tax purposes, less an amount equal to the value of any property and interest in property properly qualifying as a *marital deduction* which passes or has already passed to my husband under any other provision of this Will, by operation of law, through insurance contracts, or otherwise, and less the amount of Sixty Thousand Dollars ($60,000.00) which Trust shall be known as the FRED V. BEST Trust, to be held and distributed as follows: * * *." (emphasis supplied)

The above-quoted provision is helpful in determining the intention of the testatrix to give and grant to the surviving spouse the power of appointment which is unequivocally expressed in paragraph II B.1., and which reads as follows:

"My Trustees shall pay over and distribute the entire corpus of the Fred V. Best Trust, or the part thereof then remaining, to such person or persons including his estate, in such manner as my said husband may appoint to receive the same by his Last Will and Testament, *which general testamentary power of appointment hereby is given and granted unto him and shall be exercisable by him alone and in any event.*" (emphasis supplied)

Moreover, in order to satisfy the requirement that "the words of a will are to receive an interpretation which will give to every expression some effect, rather than one which shall render any of the expressions inoperative," SDC 56.0309, supra, we must construe paragraph II B.2. as substitutional, intended to take effect only if the surviving spouse should fail to exercise his power of appointment. (Hence, the necessity "to redraft Fred's will to specifically state in his will that he is not exercising any power of appointment.")

Taxpayers contend that it was only through a typographical error that a phrase was omitted from paragraph II B.2., which would have provided that such provision be operative only in case of a failure to exercise the power of appointment previously granted. We find no convincing evidence that such an error occurred in just that manner, but it does seem to be a likely explanation of the ambiguity in the will.

The memorandum decision of the South Dakota Circuit Court construing the will contains the following statements by the Honorable George A. Rice, an experienced and learned jurist:

"From Evans v. Ockershausen ([69 App.D.C. 285] 100 F.2d 695 [128 A.L.R. 177]) I quote the following: 'Where there is ambiguity in the language of the will, * * * the interpreter may put himself in the place of the testator to assist in arriving at the real intent.' This is in accordance with our 56.0302. To do that here we find Mrs. Best seeking the counsel and services of a lawyer of reputation in the drafting of her will. She was disposing of an estate upon which would fall the burden of a heavy estate tax. The Court can take judicial notice of such tax and the device known as the marital deduction to lessen such burden. Mrs. Best's relationship to her husband is shown by the will itself to be such that there was no hesitancy or reluctance in granting to him the absolute power of disposition contained in B.1. Apparently she did not believe it would be exercised, hence the provisions in B.2. However, this does not detract from the power previously given."

We concur in this reasoning.

In summary, we hold that (1) the prior state court judgment is binding upon us, and (2) testatrix's will should be construed as giving her surviving spouse the power of appointment over the assets of the trust fund here involved. For either or both of these reasons, taxpayers are entitled to the tax refund which they seek.

This memorandum decision shall constitute the court's Findings of Fact and Conclusions of Law.

Judgment will be entered accordingly.

It has been agreed between the parties in this case that if the plaintiffs prevail on all or any part of the issues, the correct amount of the refund shall be computed by the Internal Revenue Service, and if the parties are unable to agree on the amount so computed, the question shall be returned to the court for final determination. Upon determination of the amount of the tax refund, counsel for the plaintiffs will prepare and submit to the court, upon ten days notice to counsel for the government, an appropriate judgment. Such judgment should contain the following provision: "Further, the Court hereby certifies that in performing his official duties involved herein, the defendant had probable cause."