Kenneth C. KELLAR, Surviving Executor of the Last Will and Testament and Estate of Chambers Kellar, Deceased, and as Executor of the Estate of Floy B. Kellar, Deceased, Plaintiff,

v.

T. C. KASPER, Collector of Internal Revenue of the United States of America for the District of South Dakota, Defendant.

Civ. No. 424.

United States District Court
D. South Dakota, W. D.

Feb. 28, 1956.

Kenneth C. Kellar and R. E. Driscoll, Jr., Lead, S. D., for plaintiff.

Charles K. Rice, Acting Asst. Atty. Gen., Andrew D. Sharpe and Lester L. Gibson, Attorneys, Department of Justice, Washington, D. C., and Clinton G. Richards, U. S. Atty., Sioux Falls, S. D., for defendant.

MICKELSON, Chief Judge.

On April 15, 1948, shortly after the enactment of the marital deduction provisions in the Estate Tax statute, Chambers Kellar, an attorney, executed a will which revoked a prior will executed on November 23, 1945. The 1948 will was in effect when the decedent died on May 19, 1950. It provided, in part, as follows:

"Item 2. I give and bequeath to my wife, Floy B. Kellar, if living at the time of the Distribution of my estate, the sum of One Hundred Thousand Dollars, ($100,000), in money or at her option in securities to be selected by her, at their market value; if she then be dead this legacy to lapse and become a part of my residuary estate. It is my will and I do so direct that this legacy shall be paid in full prior to the payment of any other legacy, bequest or devise.

"Item 3. I give and bequeath to my son, Kenneth C. Kellar, all my jewelry, firearms, camping and hunting equipment, and game trophies, also my law library and office furniture and equipment.

"Item 4. I give and bequeath to Blanche Colman and Ila Stevens the sum of One Thousand Dollars ($1,000) each.

"Item 5. If living at the time of the distribution of my estate, I give, devise and bequeath to my wife, Floy B. Kellar, one-third, and to my son, Kenneth C. Kellar, two-thirds of all the rest, residue and remainder of my property and estate, real, personal and mixed, wherever located or situated of which I may die seized or possessed, after the payment out of such rest, residue and remainder of all incumbrances and taxes as hereinafter in this, my Will, provided. If either my wife or my son dies prior to the distribution of my estate, I give, devise and bequeath all of said rest, residue and remainder of my property and estate

to the survivor of them, and in the event both my wife and my son die prior to the distribution of my estate, I give, devise and bequeath all of said rest, residue and remainder of my property and estate to my grandsons, Kenneth Chambers Kellar, Jr., and Sherman Kellar, share and share alike, or to the survivor."

After due probate procedures a decree of final distribution was entered on November 18, 1950. The decedent's wife, Floy B. Kellar, lived until May 22, 1952. In the estate tax return the executors, being decedent's son and wife, attempted to take as a marital deduction the value of the interest given to Floy B. Kellar in Items 2 and 5 of the will, under Sec. 812(e) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 812(e). This deduction was disallowed by the Commissioner of Internal Revenue and in the litigation which followed the late Judge A. Lee Wyman upheld the contention of the executors. On appeal to the Circuit Court of Appeals for the Eighth Circuit the decision of the District Court was reversed and the case was remanded. Kasper v. Kellar, 8 Cir., 217 F.2d 744, 745, 748. The Court of Appeals rejected the executors' contention that actual distribution to the surviving spouse within six months after the decedent's death was sufficient to bring this case within the exception stated in Sec. 812 (e) (1) (D) of the Internal Revenue Code of 1939. However, the executors made an alternative contention that the phrase "at the time of the distribution of my estate" was entitled, under South Dakota law, to be read "at the time of my death" and that, therefore, the decedent's spouse had been given the requisite indefeasible vested interest. It was for a decision of this point of state law that the Court of Appeals remanded the case to the District Court.

In remanding the case the Court of Appeals said:

"On the basis of what has been said, the judgment is reversed and the cause is remanded, for a determination, on the present record or otherwise, as the court may deem appropriate, of whether, under the wills-and-property law of South Dakota, the language used and the intention and the circumstances involved would be regarded as having had the legal effect of vesting and making indefeasible in the widow, as of the time of the testator's death, the property devised and bequeathed to her."

The Court of Appeals also said:

"On the question of resolving what local law is, which is unclear or unsettled, we have particularly emphasized, as our many decisions indicate, that we desire and will heavily rely upon the considered appraisal of a District Judge as to what the local law of his jurisdiction is.

"This is as it should be, for factors of evaluation and judgment on unsettled questions will naturally be present at the local level, which are not available to us, such as unreported trial-court decisions, percolating judicial trends, accepted legal climate, and familiarity with prevailing professional thought and temper."

Upon stipulation I permitted the parties to offer testimony of expert witnesses bearing upon the sole question to be determined by me. The plaintiff introduced the testimony of four witnesses and the defendant of one, all outstanding practicing lawyers and members of the State Bar of South Dakota, and officers of this court. My determination of the question here presented will, therefore, be based upon the record existing at the time the case was remanded and upon this additional testimony.

The suit is brought for the recovery of estate taxes in the amount of $30,563.- 69, plus interest, by Kenneth C. Kellar, surviving executor of the Estate of Chambers Kellar and executor of the Estate of Floy B. Kellar.

The four witnesses who testified for the plaintiff (one of them a former mem-

ber of the Supreme Court of the state for a period of twelve years), in answer to the question here involved, and after having been asked if they had read and studied the printed record and briefs of both parties and the opinion of the Circuit Court of Appeals in this case, stated unequivocally, in substance,

"That the title to the property devised and bequeathed to Mrs. Kellar vested as of the date of the testator's death, and vested indefeasibly."

The witness called by the defendant stated as his opinion

"That a vested title did vest in Mrs. Kellar at the time of the testator's death, but that it was not an indefeasible title."

Each witness then gave lengthy reasons for his conclusions. The Court is deeply grateful for the considered opinions of these highly respected members of the bar and officers of this Court.

In the Court's mind the answer to the question is not a simple one, as pointed out by Judge Johnsen in the opinion of the Court of Appeals. Much conflict appears in the decisions from the several states where a similar question has been considered. I do not deem it necessary in this opinion to review the cases from these other jurisdictions, many of which are cited in the Court of Appeals opinion. I have, however, carefully reviewed and considered all of them, and many others in arriving at my decision in this case.

The plaintiff contends flatly that the language used by the testator "if living at the time of the distribution of my estate" and the intention and circumstances involved, should be construed as "if living at the time of my death", and that title to the property vested indefeasibly in Mrs. Kellar upon the death of her husband.

The defendant, on the other hand, contends that the decedent's wife received an interest which vested at some indefinite time after the decedent's death or, if it did vest at the time of the decedent's death, was subject to divestment in the event that she failed to survive to an indefinite time after the decedent's death.

▉ The rule in South Dakota is that title to property, both real and personal, passes immediately to the heirs and beneficiaries upon the death of the intestate or testator, subject only to the control of the County Court for the purpose of administration, and a decree of distribution vests or grants no title, but merely releases the property from probate and confirms the title already passed to the heirs or beneficiaries.

SDC 56.0325 reads:

"Testamentary dispositions, including devises and bequests to a person on attaining majority, are presumed to vest at the testator's death." In re Guider's Estate, 63 S.D. 495, 260 N.W. 828, Carter v. Frahm, 31 S.D. 379, 141 N.W. 370, Federal Land Bank of Omaha v. Fjerestad, 66 S.D. 429, 285 N.W. 298, 124 A.L.R. 780; Thomas v. Morristown State Bank, 53 S.D. 499, 221 N.W. 257.

It may thus be stated that the law of South Dakota definitely favors the rule of early vesting of title to property, both real and personal, passing under a will unless there is a clear intention of postponing such event.

▉ That a testator can make a conditional devise or bequest, either as a condition precedent to the vesting of title, or as a condition subsequent, is undisputed. SDC 56.0328 provides:

"A conditional disposition is one which depends upon the occurrence of some uncertain event, by which it is either to take effect or to be defeated."

SDC 56.0329 provides:

"A condition precedent in a will is one which is required to be fulfilled before a particular disposition takes effect."

SDC 56.0330 provides:

"Where a testamentary disposition is made upon a condition prece-

dent, nothing vests until the condition is fulfilled * * *."

SDC 56.0332 provides:

"A condition subsequent is where an estate or interest is so given as to vest immediately, subject only to be divested by some subsequent act or event."

Defendant relies heavily to support his contention upon the case of Parker State Bank v. Fields, 69 S.D. 605, 13 N.W.2d 302. I construe that case as authority only for the holding that where a conditional devise is made and that condition is definite and certain, that our court will recognize such condition expressed by the testator in his will and carry it out. There the title of C was conditioned on the specific provision that C outlive both A and B, the testators under a mutual will. I think the Court was entirely correct in its construction of the will there involved and in reaching the conclusion which it did. I find nothing in the Fields case throwing any light upon the question to be determined here.

A later South Dakota case is Briggs v. Briggs, 73 S.D. 500, 45 N.W.2d 62, and should be compared with the Fields case. In the Briggs case the presented problem was:

By his will, A left certain property, including real estate, to various beneficiaries, one of whom was his son B. Further provisions of the will were to the effect that A wanted it "plainly understood" that none of such beneficiaries could sell such real estate unless necessary for support purposes and with consent of "The other heirs" required; also that "in case of the death of one of such beneficiaries without issue" the other beneficiary should inherit the share of the deceased beneficiary, but if such beneficiary left "living issue of child or children", such issue would inherit their parent's portion of the property. A predeceased B. At the time of A's death B had a son C, then two years old and unborn at the time A's will was made.

B's wife died. He remarried and was survived by a widow and two daughters, his will leaving his entire estate to his widow. C brought action to quiet title to an undivided share of the real estate inherited by B from A, claiming that by reason of the above summarized provisions of A's will such land was devised to B for life, with the remainder to C and B's other surviving children.

The Court there held, in substance, that the earlier provisions of the will were adequate as a devise of a fee absolute, and the resulting question was whether the subsequent provisions above summarized, restricted B to a life estate, the essence of the question being whether such provisions were successive or substitutional. Considering the entire context of the instrument the Court held that such subsequent conditions should be deemed substitutional and not successive, i. e., that what A intended was that if B predeceased A without issue, B's share would go to the other beneficiaries, and if B predeceased A with issue, such issue would inherit B's share. The authorities cited by the Court were to the effect that in case of doubt constructional preference is given to such a result, as distinguished from a contingency dependent upon future occurrence after the death of a testator. It seems to me the same general line of reasoning is applicable to the present case. In considering what Mr. Kellar intended, and treating the language of his will as open to doubt, it would be more reasonable to assume that he had in mind the contingency of whether his wife would survive him, than the contingency of whether or not she would still survive at the indefinite time of the closing of his estate.

Both the Fields case and the Briggs case are authority on the point, that the ultimate and final question in the construction of a will, is what the testator intended as indicated by the language used, and, if this is doubtful, then by the language used in the light of all of the surrounding circumstances. Where a doubt exists our state Supreme

Court has shown a definite tendency to favor a substitutional construction rather than a successive construction as shown by both of these cases.

■ I think it can be said with reasonable certainty that under South Dakota law, the language used by Chambers Kellar in devising and bequeathing the property to Mrs. Kellar vested the title thereto in her immediately upon his death.

I pass then to the question of whether such vested title was indefeasible and not subject to divestment under the terms of the will "if living at the time of the distribution of my estate." Where title has once vested, courts are generally reluctant to hold that there has been a divestment unless the condition for such divestment is plain and specific, and the event causing such divestment can be determined with reasonable certainty. When, under the wording of Mr. Kellar's will, would such claimed divestment take place? The will reads "if living at the time of the distribution of my estate." This could mean under South Dakota law that she survive any one of four different times and occasions in the operation of South Dakota wills-and-property law. It could refer to the "distribution" effected by the law which occurs on the death of the testator. Again, there is nothing in South Dakota law that prevents an executor from paying a cash legacy immediately upon his appointment and qualification if he is certain that the estate is solvent and that in due course there will be sufficient funds after paying such legacy to pay the funeral expenses, expenses of administration and claims. Thus "distribution" could mean the time when the legacy provided under Item 2 of the decedent's will was actually paid to Mrs. Kellar. (Note the last sentence of this item: "It is my will and I do so direct that this legacy shall be paid in full prior to the payment of any other legacy, bequest, or devise.") It could also mean and refer to the actual entry of a decree of "distribution", and here, again, under South Dakota law, this could be at the time of the entry of a partial decree of distribution, which is common, particularly in the case of large estates such as this one, or, where the estate is apt to remain open for any great length of time, or it could mean the actual entry of a final decree of "distribution", which would be when the estate had been completely administered and was ready to be closed. SDC 35.17.

The foregoing serves to point out the indefiniteness and uncertainty of construing the words of the testator as meaning something to happen as a condition subsequent to his death which would divest and defeat the title given to Mrs. Kellar.

■ I can reach no other conclusion but that the wording of Mr. Kellar's will is ambiguous, and that, while a court in construing such a will must try to determine the intention of the testator from the face of the will itself, looking to the four corners thereof, this will must be construed and the ambiguities determined by not only looking to the face of the will to determine the intentions of the testator, but also by looking to the circumstances involved.

In the Briggs case our Court said [73 S.D. 500, 45 N.W.2d 65]:

"The sole purpose of the process of construction is to discover the intention of the testator. If that intention is clearly revealed by the language of the will, when read in its entirety in the light of the circumstances of its formulation, it will be declared. If after its language is so considered, doubt remains as to the meaning the testator sought to express, his intention will be determined by reconsidering his entire language and the circumstances surrounding the making of the will in connection with established canons of constructional preference."

I also agree with Judge Smith in that opinion when he quotes the much repeated statement that " 'no will has a brother.' "

Mr. Kellar's prior will, executed in 1945, gave a life estate to practically all of his property to Mrs. Kellar. Shortly after the amendment to the Revenue Act providing for the marital deduction, his attention was called to this change in the law by his legal secretary, and within a short time thereafter he drew the present will, with the admitted purpose and intention of taking advantage of such marital deduction. It is urged by the defendant that the law itself is not as plain as to the type of devise or bequest which may entitle the estate to such marital deduction as the subsequently issued regulations, and that Mr. Kellar may have intended to secure the benefits of such marital deduction but that he may have failed to do so in the light of the regulations and the decision of the Circuit Court of Appeals in this case. As to this contention I will only say that in my opinion Mr. Kellar, astute lawyer that he was, can be presumed to have understood the marital deduction provision of the law, and the record shows that he redrew his will for the sole purpose of taking advantage of such marital deduction. It seems to me that great weight must be given to his admitted intention and purpose, in construing the words he used in his will. It must be admitted that he could have made his intentions clearer by a choice of other words, but no one recognizes better than lawyers and judges that everyone does not use the same words in expressing their thoughts and intentions.

As indicated above, I cannot gain too much light from the decisions of other states as to what the South Dakota law is upon the question involved. There appears to be a sharp conflict among them. The two California cases cited by the defendant, In the Matter of Estate of Clark, 103 Cal.App. 243, 284 P. 231, and In re Estate of Hampe, 85 Cal.App.2d 557, 193 P.2d 133, are considerably in point, although in the Clark case the words [103 Cal.App. 243, 284 P. 232] " 'to be distributed in the due course of the settlement' " and followed by the words "the 'date * * * of distribution' ", make it quite clear that the testator there intended that the estate be probated and that the intended legatee survive such "settlement" and "distribution". The Hampe case appears to have been decided solely upon the Clark decision. Insofar as it may be said that these cases are analogous to the present case, I refuse to follow them and I do not believe that the Supreme Court of the State of South Dakota would follow them.

Not meaning to say that it has in any manner entered into my decision in this case, because the decision of the Court of Appeals has settled this point; but I cannot close my eyes to the fact that Mrs. Kellar did survive Chambers Kellar by approximately two years; that his estate was closed and final decree of distribution was entered within six months following his death; and that Mrs. Kellar did hold absolute, and indefeasible title to the property devised and bequeathed to her until her death, which occurred approximately eighteen months after the decree of final distribution was entered.

It is my opinion that under the wills-and-property law of South Dakota, the language used by Chambers Kellar in his will, and the intention and the circumstances involved, would be regarded as having had the legal effect of vesting and making undefeasible in the widow, as of the time of the testator's death, the property devised and bequeathed to her.

Findings of Fact, Conclusions of Law and Judgment will be for the plaintiff for the reasons expressed herein.