230 Cal.App.2d 158 (1964)
Estate of LEO J. NEWMAN, Deceased. EVA MANDEAU et al., Objectors and Appellants,
v.
LOTHAR FRANK, as Trustee, etc., et al., Petitioners and Respondents.
Civ. No. 28049. 
California Court of Appeals. Second Dist., Div. Four. 
Oct. 16, 1964.
 Alef & Schnitzer and Arthur Alef for Objectors and Appellants. *160
 Harry D. Salinger, William F. Minton, McLaughlin & McLaughlin, Edward C. Baretta and Stephen D. Maffini for Petitioners and Respondents.
 KINGSLEY, J.
 This case involves an appeal taken by certain beneficiaries of a testamentary trust from an order of the probate court instructing the trustees of that trust to distribute the share of Dr. Moritz Newmann, a deceased beneficiary, to his estate rather than to appellants. The appeal is resisted by the representative of the estate of Dr. Newmann and by the residuary beneficiary under his will. Although the trustees entered a formal appearance before this court, they expressly took no position on the merits of the appeal.
 Pursuant to the will of Leo J. Newman, a decree of distribution was entered establishing Trust A (and Trust B which is not involved in the appeal). The decedent's widow, Sophie Newman, was named as life tenant of Trust A and various persons were named as remaindermen. The Bank of America National Trust & Savings Association and Lothar Frank were named as cotrustees. The income from Trust A was payable to decedent's widow, Sophie Newman, for her life. The decree of distribution then provided:
 "Upon the death of decedent's wife, Sophiew [sic] Newman, the principal then left of Trust A, with all accumulations thereon, shall be distributed as follows:"
 "A. One-half (1/2) thereof in the following shares to the following persons:"
 "1. One full share to decedent's brother, Dr. Moritz Newmann;"
 "2. One full share to decedent's brother, Felix Neumann, and his wife, Herta Neumann, jointly, or the survivor of them;"
 "3. One full share to decedent's sister, Martha Rodell, and her daughter, Inge Rodell, jointly, or the survivor of them;"
 "4. One full share to decedent's sister, Henriette Schneeberg:"
 "5. One full share to decedent's grand-niece, Toni Powers:"
 "6. One full share to decedent's niece, Eva Mandeau, and her husband, Rolf Mandeau, jointly, or the survivor of them;"
 "7. One full share to decedent's nephew, Curt Newman, and his former wife, Audrey Newman, jointly, or the survivor of them; *161 "
 "8. One-half (1/2) of one full share to Elli Leyser;"
 "In the event any of the persons named under 1, 4 and 5 and/or both persons named under 2, 3, 6 and 7 above are not living at the time of said distribution, the share which such person or persons would receive if living shall be added in the same proportion as provided hereinabove to the shares of the persons then living."
 The decree of distribution went on to dispose of the remaining one-half of Trust A and then provided: "Both Trust A and Trust B shall terminate upon distribution of all their assets." (Italics added.)
 On September 25, 1962, decedent's widow, Sophie Newman, died. Henriette Schneeberg, named a remainderman by the will and by the decree of distribution, had survived the testator but had predeceased testator's widow. Soon after the widow's death, but prior to her receipt of any part of her interest in Trust A, Martha Rodell, another remainderman, died. [fn. 1]
 On April 1, 1963, Dr. Moritz Newmann died. As of his death there had been no delivery of any part of Trust A, all of which remained in the hands of the trustees.
 On April 3, 1963, the trustees filed a petition for instructions with respect to the validity of Sophie's exercise of her power of appointment and other questions not material to this appeal.
 On April 17, 1963, the trustees filed a supplement to petition for instructions. This supplement sought principally the answers to the question: "... shall the share of Dr. Moritz Newman in the principal of the trust estate (Trust A) be added to the shares of the surviving beneficiaries of the principal of Trust A under Sixteenth (A) of the Will of decedent herein or shall said share be distributed to the Estate of said Dr. Moritz Newman?"
 This is the question on appeal.
 The trial court filed a memorandum, the pertinent parts of which are as follows: "It is my conclusion that Sophie's death, as specified in the trust, terminated the trust by operation of law and fixed the rights of the remaindermen. See Civil Code section 871: 'When the purpose for which an express trust was created ceases, the estate of the trustee also ceases.' In other words, after Sophie's death, the trustee no longer had title and could not retain same by failing to *162 deliver the assets. Physical delivery of the assets is merely a ministerial act. To hold otherwise would violate the rule against perpetuities. (Estate of Campbell, 28 Cal.App.2d 102 [82 P.2d 22].) An analogous situation is where a will provides that a distributee must survive distribution in order to take. This means a decree of distribution; not physical delivery of the assets."
 "Section 122, Probate Code, which provides: 'Words referring to death or survivorship, simply, relate to the time of the testator's death, unless possession is actually postponed, when they must be referred to the time of possession,' merely distinguishes between the normal time for vesting provided by section 300, Probate Code, i.e., date of death, and those cases wherein the right to possession is actually postponed, and does not, in my opinion, refer to mere physical possession."
 The relevant portions of the trial court's conclusions of law are as follows:
 "1. Trust A established under the Will of the late Leo J. Newman and established by the Decree of Distribution entered in his estate terminated on the death of Sophie Newman."
 "2. Upon the death of Sophie Newman the shares of the remaindermen designated under Trust A living at the time of the death of Sophie Newman vested indefeasibly."
 "3. The actual delivery of the assets of the remaindermen of Trust A cannot be the determining factor with respect to the vesting of the remainder interest, for such a construction would violate the rule against perpetuities."
 "4. The deaths of Inge Rodell [sic] and Dr. Moritz Newmann subsequent to the death of Sophie Newman did not divest their estates of their right to a share in the remainder notwithstanding the failure of delivery of any of the remainder assets until after their deaths."
 "5. The share of the remainder of Trust A designated to be given to 'Martha Rodell and her daughter Inge Rodell, jointly, or the survivor of them' should be distributed one-half to Martha Rodell's estate and one-half to Inge Rodell Molton."
 "6. The share of the remainder of Trust A designated to be given to Dr. Moritz Newmann should be distributed to Bank of America National Trust and Savings Association as Executor of the Estate of Dr. Moritz Newmann, also known as Ernest M. Newman, deceased."
 [1] Appellant contends that the death of Dr. Moritz Newman before taking physical possession of his share terminated *163 his interest and that of his estate. This contention is without merit. The testator Leo J. Newman directed that "upon the death of decedent's wife, Sophie Newman, the principal then left of Trust A, with all accumulations thereon shall be distributed as follows ..." and also provided for gifts over in the event the named legatees "are not living at the time of said distribution." (Italics added.) Clearly the "distribution" was to be as of the date of Sophie Newman's death. No other time for it is specified in the trust instrument.
 In this instrument "upon the death of decedent's wife" and "shall be distributed" are inextricably linked in the dispositive sentence so as to make distribution and death of the life tenant concurrent events upon which the rights of the remaindermen vest absolutely.
 [2] Estate of Hill (1963) 214 Cal.App.2d 812, 816 [29 Cal.Rptr. 814], sets forth the applicable law as follows: "Although wills are to be construed in accordance with the testator's intent, it is the intent expressed by the words of the will itself which must be given effect rather than some undisclosed purpose or intent that may have existed in the mind of the testator. [Citations.]"
 [3] "In other words, a court must give effect to the language of the will, and no intention should be attributed to a testator which cannot reasonably be drawn from the language of the document itself. [Citations.] [4] It is to be presumed that a testator did not intend that which he might have said but did not say in the will. [Citations.] [5] If the words of the will are clear and unambiguous, the testator's intention is to be derived solely therefrom. [Citations.]"
 To hold that vesting of the remainderman's interest takes place at the time of the actual physical distribution of the assets is to subject that interest to possible fortuitous and extraneous circumstances beyond the control both of the remainderman and the trustee. Unless spelled out clearly, it would be unreasonable to so construe the will.
 [6] In Ball v. Mann (1948) 88 Cal.App.2d 695, 699 [199 P.2d 706], the court stated: "When the objects of a trust have been fully performed the title of the trustee ceases and the legal as well as the equitable title vests in the beneficial owner unless the intention of the creator clearly appears that the legal title should continue in the trustee."
 [7] Appellants, however, cite Probate Code section 122 to support their position. It provides: "Words in a will referring to death or survivorship, simply, relate to the time *164 of the testator's death, unless possession is actually postponed, when they must be referred to the time of possession."
 The trial court answered the appellants' contentions with regard to this section when it stated that this section "merely distinguishes between the normal time for vesting provided by section 300, Probate Code, i.e., date of death, and those cases wherein the right to possession is actually postponed, and does not, in my opinion, refer to mere physical possession."
 Appellants' reliance on Probate Code section 1023 is equally unconvincing. It states: "If an heir, devisee or legatee dies before the distribution to him of his share of the estate, such share may be distributed to the representative of his estate for the purpose of administration therein, or to the estate of such decedent for the purpose of administration therein, with the same effect as if it had been distributed to him while living."
 "In the event any heir, devisee or legatee so dying before distribution is named in any decree of distribution heretofore or hereafter entered, purporting to make distribution to such distributee by name, such decree shall not be deemed void but shall have the same effect as though such distribution had been made to him while living. However, where the share is purportedly distributed to him pursuant to the terms of a will which provides that he shall be entitled to the same only in the event he survives the date of distribution, then such purported distribution as to him shall be void. This paragraph shall not apply in any case where such heir, devisee or legatee dies before the decedent." (Italics added.)
 The italicized part of the code section above is relied upon by appellants to support their position. However, we do not think that this section is here pertinent. Admittedly, if Dr. Newman died before the "date of distribution," the will, the decree of distribution to the trustees and section 1023 all would have barred his estate from participation. But this begs the very question before us in the present action--namely what was the "date of distribution" of the trust estate. As we have said, we conclude, with the trial court, that that date was the date of Sophie Newman's death and not the date when, all of the sundry mechanical problems involved in the transfer of record title having been accomplished, physical delivery of the trust assets could be accomplished. Instruments of conveyance must be drawn, executed and recorded, stock certificates must be endorsed, delivered to corporate transfer agents and registrars, and returned, checks must be *165 drawn and receipts prepared. If the death of a remainderman in the midst of this process were to divest his interest, the process might well become incredibly repetitious. [8] While a testator or trustor may legally direct such result, it should not be assumed that he so intended except in the light of the most explicit and positive language; no such language faces us here.
 All of the cases cited and relied on by appellants are distinguishable on their facts and as to the expressed intent of the several testators involved in those cases. Estate of Richardson (1963) 213 Cal.App.2d 229 [28 Cal.Rptr. 599], involved the right to income from a trust estate, received by the trustee during the lifetime of a beneficiary but not paid to him. The court there applied the special and long established rule in such situations, as set forth in section 235A of the Restatement Second of Trusts. In Estate of Harrington (1957) 154 Cal.App.2d 470 [316 P.2d 432], the will directed that the income from a testamentary trust be paid to the testator's sister for her "welfare, care, support, treatment, comfort and happiness ... during her lifetime. ..." (Italics added.) The court concluded that the words emphasized in the quotation above clearly indicated an intention that income received but not paid during the sister's lifetime should not go to her estate since such payment would not contribute to her welfare, care, support, treatment, comfort and happiness. Estate of Hartson (1933) 218 Cal. 536 [24 P.2d 171], involved an interpretation of the meaning of the words "legal heirs" as used in the will before the court. It involved no problem of distribution on termination.
 Appellants rely heavily on the case of In re Winter (1896) 114 Cal. 186 [45 P. 1063]. However, the case, if anything, supports the respondents' position. In the Winter case, the testator, by will, left a life estate to his wife and upon the wife's death the estate was to be sold and the proceeds to be divided "between my surviving brothers and sisters." The obvious difference between the two cases is that in Winter the property did not go to the remaindermen but the proceeds after sale were to go to the surviving remaindermen. The trustee in Winter, on the death of the life tenant, still had duties to perform, i.e., the sale of the property. Such is not the situation in the case on appeal.
 The court, in the Winter case, held that the interest vested indefeasibly upon the sale of the estate and not upon physical distribution of the proceeds from the sale. Therefore, as in *166 the case on appeal, the interests of the remaindermen vested indefeasibly at that time in which there was nothing left for the trustees to do but to perform the purely ministerial act of distributing the trust property.
 [9] Appellants, however, contend that the provision in the decree of distribution that "Both Trust A and Trust B shall terminate upon distribution of all their assets" must be construed to mean that the testator had in mind the actual distribution of the assets and not the date of the widow's death, as the operative fact which would vest the interests of the remaindermen.
 However, this contention of appellants is met by the provisions of Probate Code section 104: "A clear and distinct devise or bequest cannot be affected by any reasons assigned therefor, or by any other words not equally clear and distinct, or by inference or argument from other parts of the will, or by an inaccurate recital of or reference to its contents in another part of the will."
 Furthermore, the word "distribution," as used in the practice of wills, refers to distribution in probate and not to the actual physical distribution of the assets. (Estate of Dunphy (1905) 147 Cal. 95 [81 P. 315]; Estate of Rankin (1953) 118 Cal.App.2d 184 [257 P.2d 95].)
 [10] Appellants also seem to rely heavily on the fact that the testator left much of his estate to Jewish charities and therefore it would violate his intent that the portion which is to be distributed to Dr. Moritz Newmann would, by his will, be distributed to a Protestant church and a Catholic charitable organization. However, as long as the demonstrated intent of the testator was that his brother receive one share of Trust A provided he survive distribution, the fact that other distributions were made to Jewish charities should have no bearing on this appeal. If testator wanted Dr. Moritz Newmann's share to go to Jewish charities, he could have given him a life estate, the remainder to go to a charity named by the testator.
 [11] As was said in Estate of Bateman (1962) 205 Cal.App.2d 792, 797 [23 Cal.Rptr. 445], "Where the construction given the will considered without the aid of extrinsic evidence is reasonable and appears to be consistent with the testator's intention a court of review will not substitute another construction even though it appears to be equally tenable." Here, the construction adopted by the trial court not only was reasonable but, as we have demonstrated above, was the more *167 reasonable of the two interpretations urged on it and on us. Its decision should stand.
 The argument has been made by respondents that to find that the remaindermen's share vested at the date of physical distribution would violate the rule against perpetuities. The trial court so held. However, since the clear intent of the testator was that the interests should vest at the time of the life tenant's death, it is unnecessary to decide this quesion.
 The order appealed from is affirmed.
 Burke, P. J., and Jefferson, J., concurred.
NOTES
[fn. 1] 1. No issue as to the distribution of Martha Rodell's share is presented on this appeal.