*Decisions will be entered under Rule 155.*

ESTATE OF GERALDINE W. HARMON, DECEASED, WALTER I. BREGMAN, EXECUTOR, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 14654–81.     Filed February 28, 1985.

*Michael L. Gianelli*, for the petitioner.
*Charlotte Mitchell*, for the respondent.

SIMPSON, *Judge*: The Commissioner determined a deficiency of $41,174 in the estate tax due from the Estate of Geraldine W. Harmon. The sole issue for decision is whether a gift to the husband of the decedent subject to his surviving distribution of

her estate created a terminable interest under section 2056(b) of the Internal Revenue Code of 1954[1] for which no marital deduction is available.

## FINDINGS OF FACT

Some of the facts have been stipulated, and those facts are so found.

Walter I. Bregman, the son of Geraldine W. Harmon and the executor of her estate, had his legal residence in Stamford, Connecticut, at the time he filed the petition in this case. He timely filed an estate tax return with the Internal Revenue Service Center, Fresno, California.

Geraldine W. Harmon (the decedent or Mrs. Harmon) died on December 5, 1977. Prior to her death, she resided with her husband, Sidney Harmon, in a condominium located in Rancho Mirage, California. The condominium was Mrs. Harmon's separate property.

Mr. and Mrs. Harmon were married in 1971 when Mrs. Harmon was about 61 years old and Mr. Harmon was about 64 years old. They had no children of their marriage. Mr. Harmon had been married twice previously. He had four children from his second marriage, all of whom were alive and adult at the time of Mrs. Harmon's death. Mrs. Harmon had been married once previously and had one child, Walter I. Bregman, from that marriage. Relations between Mr. and Mrs. Harmon and their separate families were amicable.

At the time of their marriage, Mrs. Harmon owned real and personal property with an estimated net value of $1 million, while Mr. Harmon owned personal property with an estimated net value of $200,000, and no real property. Before their marriage, they executed an antenuptial agreement by which they agreed that all property owned by each party prior to their marriage, and all property coming to each party from whatever source during the marriage, was to remain separate property. They both also waived all community property rights, all rights as an heir or surviving spouse, all rights to a family allowance or probate homestead, all rights in the event of death, and all right to act as administrator of the estate of

---

[1]All statutory references are to the Internal Revenue Code of 1954 as in effect during the year in issue, unless otherwise indicated.

the other. However, during their marriage, the decedent and Mr. Harmon did share a joint bank account and expenses.

Mrs. Harmon executed her will on June 12, 1974. The pertinent provisions of the will are as follows:

THIRD: I hereby give, devise and bequeath all tangible personalty and the condominium located at Tamarisk West, Rancho Mirage, California to SIDNEY HARMON. If SIDNEY HARMON *fails to survive distribution of my estate*, then in that event I hereby give, devise and bequeath the tangible personalty [sic] property and condominium to my son WALTER I. BREGMAN.

FOURTH: (A) I give and bequeath all of my jewelry to my beloved son, WALTER I. BREGMAN, but should he predecease me, then I give this bequest to my sister, SHIRLEY W. BERNSTEIN.

\*       \*       \*       \*       \*       \*       \*

(C) I give and bequeath the sum of Two Hundred Thousand Dollars ($200,000.00) to the BANK OF AMERICA, in trust.

(1) The Trustee shall pay for the support of SHIRLEY BERNSTEIN the income from the Trust.

(2) Upon the death of SHIRLEY BERNSTEIN the trust shall terminate and be distributed to my son WALTER BREGMAN.

\*       \*       \*       \*       \*       \*       \*

FIFTH: I give, bequeath and devise to my son, WALTER I. BREGMAN, if living at the time of my death, all the rest, residue and remainder of my estate, \* \* \*

SIXTH: In the event that my said son, WALTER I. BREGMAN, shall predecease me, all the rest, residue and remainder of my estate, \* \* \* I give, devise and bequeath to the BANK OF AMERICA, National Trust and Savings Association, as Trustee. Such Trust shall be known as the "Grand-children's Trust" \* \* \*

[Emphasis added.]

The June 1974 will revoked a will that the decedent had executed in June 1972, shortly after she married Mr. Harmon. In the earlier will, the decedent had left all of her estate to her son, or if he predeceased her, to her grandchildren, in trust. She executed the June 1974 will when she became concerned about the future financial needs of her husband and of her sister, Shirley Bernstein. In addition to providing a trust fund for her sister's support, Mrs. Harmon wanted to insure that Mr. Harmon would be able to continue residing in the Rancho Mirage condominium after her death as Mr. Harmon had no residence of his own and his separate personal property had

become substantially depleted since their marriage. By codicil executed in September 1975, Mrs. Harmon also bequeathed $75,000 to a trust, with the income payable to Mr. Harmon during his life and the corpus to be distributed to her son on Mr. Harmon's death. However, upon Mrs Harmon's death, the bulk of her estate would still pass to her son. The revoked will, the 1974 will, and the codicil were all prepared by the decedent's attorney, H. Morgan Dougherty.

A petition for the probate of the decedent's will and for letters testamentary was filed on December 15, 1977, in Riverside County, California. A judgment for final distribution of the estate was entered on January 8, 1979, in that county. Mr. Harmon survived the decedent's death and the entry of the judgment of final distribution.

The petitioner claimed a marital deduction of $117,175 on its estate tax return. In his notice of deficiency, the Commissioner disallowed $116,220 of the claimed marital deduction because he determined that paragraph "THIRD" of the decedent's will passed a nondeductible, terminable interest in the personal property and the condominium to her husband.

OPINION

The issue for decision is whether the gift of the personalty and condominium to Mr. Harmon subject to his surviving distribution of the estate of the decedent was a terminable interest within the meaning of section 2056(b) for which no marital deduction is allowable.

Section 2056(a) permits a deduction equal to the value of any interest in property which passes from the decedent to her surviving spouse to the extent that such interest is included in determining the value of the decedent's gross estate. However, section 2056(b) sets forth an exception for life estates and other terminable interests where the deduction will not be allowed:

SEC. 2056(b). LIMITATION IN THE CASE OF LIFE ESTATE OR OTHER TERMINABLE INTEREST.—

(1) GENERAL RULE.—Where, on the lapse of time, on the occurrence of an event or contingency, or on the failure of an event or contingency to occur, an interest passing to the surviving spouse will terminate or fail, no deduction shall be allowed under this section with respect to such interest—

(A) if an interest in such property passes or has passed (for less than an adequate and full consideration in money or money's worth) from the decedent to any person other than such surviving spouse (or the estate of such spouse); and

(B) if by reason of such passing such person (or his heirs or assigns) may possess or enjoy any part of such property after such termination or failure of the interest so passing to the surviving spouse;

Section 2056(b)(3) sets forth guidelines whereby certain conditions of survivorship will not be deemed to create a terminable interest:

(3) INTEREST OF SPOUSE CONDITIONAL ON SURVIVAL FOR LIMITED PERIOD.— For purposes of this subsection, an interest passing to the surviving spouse shall not be considered as an interest which will terminate or fail on the death of such spouse if—

(A) such death will cause a termination or failure of such interest only if it occurs within a period not exceeding 6 months after the decedent's death, or only if it occurs as a result of a common disaster resulting in the death of the decedent and the surviving spouse, or only if it occurs in the case of either such event; and

(B) such termination or failure does not in fact occur.

The nature of a legal interest in property is a matter of State law, and therefore in the present case, we must look to California law to determine whether the disposition to Mr. Harmon under paragraph "THIRD" of the will might terminate or fail more than 6 months after the decedent's death. *Broday v. United States*, 455 F.2d 1097, 1099 (5th Cir. 1972); *Estate of Fulmer v. Commissioner*, 83 T.C. 302, 304 (1984); *Estate of Rubinow v. Commissioner*, 75 T.C. 486, 489 (1980). In making this determination, we are, "in effect, sitting as a state court," being bound by decisions of the Supreme Court of California and "giving 'proper regard' to relevant rulings of other courts of the State." *Commissioner v. Estate of Bosch*, 387 U.S. 456, 465 (1967); *Estate of Fulmer v. Commissioner, supra* at 306.

The petitioner's ultimate position is that the phrase "fails to survive distribution of my estate" contained in paragraph "THIRD" must be interpreted as synonymous with the phrase "fails to survive my death" in order to effectuate the intent of the decedent. The petitioner contends that the phrase "fails to survive distribution of my estate" is ambiguous and that the ambiguity is not removed by reference to anything else contained within the "four corners" of the will. We are therefore asked to consider extrinsic evidence, including the

circumstances surrounding the execution of the will and declarations of the decedent, in order to determine the decedent's intent. If we conclude that she intended that her husband need only survive her death in order to obtain an indefeasible interest in the condominium and its contents, then his interest is not a terminable interest, and the marital deduction is allowable.

The Commissioner, on the other hand, maintains that paragraph "THIRD" unambiguously conditions Mr. Harmon's interest in the condominium and its contents on his surviving not only the death of the testator but also the distribution of her estate. Such condition produces a terminable interest because distribution of the estate would not necessarily occur within 6 months of the death, and in fact, the decree of final distribution was issued more than 13 months after the death. The Commissioner objected at trial to the admission of any extrinsic evidence bearing on the decedent's intent. We reserved decision on the Commissioner's objection and now overrule it.

The cardinal rule in the construction of wills, to which all other rules must yield, is that a will is to be construed according to the intention of the testator, as expressed therein. *In re Estate of Dodge*, 6 Cal. 3d 311, 324, 491 P.2d 385, 394, 98 Cal. Rptr. 801, 810 (1971); *In re Estate of Wilson*, 184 Cal. 63, 66–67, 193 P. 581, 582 (1920); see Cal. Prob. Code sec. 101 (West 1956).[2] The intent of the testator is to be garnered from the language of the will itself. *Estate of Kaseroff*, 19 Cal. 3d 272, 275, 562 P.2d 325, 327, 137 Cal. Rptr. 644, 646 (1977).

In the past, California courts have refused to consider extrinsic evidence of the testator's intention unless it was necessary to explain an ambiguity appearing on the face of the will or to reveal the existence of a latent ambiguity which did not so appear. *In re Estate of Torregano*, 54 Cal. 2d 234, 246, 352 P.2d 505, 512, 5 Cal. Rptr. 137, 144 (1960); *In re Carter's Estate*, 47 Cal. 2d 200, 302 P.2d 301, 306 (1956); *In re Sargavak's Estate*, 41 Cal. 2d 314, 259 P.2d 897, 899–900 (1953). However, it is now well settled California law that a will must be examined "in the light of the circumstances surrounding its

---

[2]All references to the Probate Code of California are to such code as in effect during the year in issue. The Probate Code has been substantially revised, effective Jan. 1, 1985. 1983 Cal. Stat. ch. 842.

execution so as to ascertain what the * * * [testator] meant by the words used. Only then can it be determined whether the seemingly clear language of the instrument is in fact ambiguous." *In re Estate of Russell*, 69 Cal. 2d 200, 444 P.2d 353, 359, 70 Cal. Rptr. 561, 567 (1968); see *In re Estate of Dodge*, 6 Cal. 3d at 318, 491 P.2d at 390, 98 Cal. Rptr. at 806; *Estate of Kime*, 144 Cal. App. 3d 246, 261–262, 193 Cal. Rptr. 718, 727–728 (Cal. Ct. App. 1983); *Hoover v. Hartman*, 136 Cal. App. 3d 1019, 1026, 186 Cal. Rptr. 669, 673 (Cal. Ct. App. 1982); *Wells Fargo Bank, National Association v. Huse*, 57 Cal. App. 3d 927, 932–933, 129 Cal. Rptr. 522, 525 (Cal. Ct. App. 1976). Thus:

If in the light of such extrinsic evidence, the provisions of the will are reasonably susceptible of two or more meanings claimed to have been intended by the testator, "an uncertainty arises upon the face of a will" ([Cal. Prob. Code Sec.] 105) and extrinsic evidence relevant to prove any of such meanings is admissible (see [Cal. Prob. Code Sec.] 106), subject to the restrictions imposed by statute ([Cal. Prob. Code Sec.] 105). If, on the other hand, in the light of such extrinsic evidence, the provisions of the will are not reasonably susceptible of two or more meanings, there is no uncertainty arising upon the face of the will * * * and any proffered evidence attempting to show an intention *different* from that expressed by the words therein, giving them the only meaning to which they are reasonably susceptible, is inadmissible. * * * [*In re Estate of Russell*, 444 P.2d at 361–362, 70 Cal. Rptr. at 569–570; fn. ref. omitted; emphasis in original.]

In *Estate of Russell*, the California Supreme Court was careful to explain that the extrinsic evidence to be considered did not include oral declarations of the testator, as the introduction of such declarations is specifically prohibited by section 105 of California's Probate Code (444 P.2d at 361 n. 18, 70 Cal. Rptr. at 569 n. 18); but in a subsequent case, the same court freely admitted testimony respecting the testator's oral declarations once it had been established that a provision of the will was ambiguous (*In re Estate of Dodge, supra*; see also *Estate of Kime, supra*). Therefore, because we are, "in effect, sitting as a state court" (*Commissioner v. Estate of Bosch, supra*), we are compelled by the recent changes in California case law to examine the circumstances surrounding the execution of Mrs. Harmon's will, in addition to the language used therein, before we can determine whether the phrase "fails to survive distribution of my estate" is ambiguous. If we determine that such phrase is ambiguous, we may then

consider all relevant extrinsic evidence of Mrs. Harmon's intended meaning, including her oral declarations.

Among the circumstances surrounding the execution of the will which we must consider are the relevant statutes, case law, and public policy in effect at the time of the execution of the will; in the absence of a contrary intent, such law is deemed to become a part of the testamentary scheme. *Wells Fargo Bank, National Association v. Huse*, 57 Cal. App. 3d at 933, 129 Cal. Rptr. at 525; see *Estate of Carley*, 90 Cal. App. 3d 582, 153 Cal. Rptr. 528 (Cal. Ct. App. 1979). Moreover, where a will is drawn by an experienced and competent lawyer, there is a presumption that technical terms in the will were used in their technical sense, unless the will or the circumstances surrounding its execution clearly indicate that the technical term was not intended to have its technical meaning. *In re Estate of Dodge*, 6 Cal. 3d at 324, 491 P.2d at 394–395, 98 Cal. Rptr. at 809–810 (interpreting Cal. Prob. Code sec. 106 (West 1956)); see *Wells Fargo Bank, National Association v. Huse*, 57 Cal. App. 3d at 935, 129 Cal. Rptr. at 526.

In the present case, Mrs. Harmon and her attorney, H. Morgan Dougherty, employed the phrase "fails to survive distribution of my estate" in paragraph "THIRD" of her will. Such phrase has a well established, technical meaning in California probate practice. According to the court in *In re Rankin's Estate*, 118 Cal. App. 2d 184, 257 P.2d 95, 97 (Cal. Dist. Ct. App. 1953):

> It is doubtful that there are in the law and practice of wills and probate administration terms that are more commonly used than "distribution," "partial distribution" and "distribution of the estate." Anyone familiar with practices in probate would understand that "distribution of my estate" means distribution in probate. * * *

Thus, on numerous other occasions, California courts have determined that the phrase "distribution of my estate" means distribution of the estate by probate decree. *In re Dunphy's Estate*, 147 Cal. 95, 100, 81 P. 315, 317 (1905); *In re Newman's Estate*, 230 Cal. App. 2d 158, 40 Cal. Rptr. 785, 790 (Cal. Dist. Ct. App. 1964); see *In re Estate of Germond*, 4 Cal. 3d 573, 483 P.2d 769, 94 Cal. Rptr. 153 (1971); *In re Estate of Taylor*, 66 Cal. 2d 855, 428 P.2d 301, 59 Cal. Rptr. 437 (1967); *In re Jameson's Estate*, 93 Cal. App. 2d 35, 208 P.2d 54 (Cal. Dist. Ct. App.

1949); *In re Hampe's Estate*, 85 Cal. App. 2d 557, 193 P.2d 133 (Cal. Dist. Ct. App. 1948); *In re Clarke's Estate*, 103 Cal. App. 243, 284 P. 231 (Cal. Dist. Ct. App. 1930).

For example, in *In re Hampe's Estate, supra*, the testator left a specific legacy and a share of the residue of the estate to a niece, with the proviso that if the niece "shall die prior to distribution," her interests in the properties would fail and be given to two other named residuary beneficiaries. The niece survived the testator and survived a decree of partial distribution covering the legacy, but she died prior to the entry of the final decree of distribution. The court held that "The phrase 'die prior to distribution' as used in a will providing that a legacy shall lapse if the legatee 'dies prior to distribution' means that if the legatee is not alive on the date of the entry of the decree of distribution the legacy lapses." Therefore, the court found that all dispositions to the niece, including the specific legacy, lapsed. 193 P.2d at 135. See also *In re Estate of Germond, supra*; cf. *In re Estate of Taylor, supra*.[3] Likewise, in *In re Jameson's Estate, supra*, the court determined, without resort to extrinsic evidence, that a disposition of a life estate in real property to the testator's husband "If * * * [he] survives distribution of my estate" created a contingent interest in the property which did not vest until he survived the probate distribution of the estate. 208 P.2d at 57.

Section 1023 of the California Probate Code also indicates that testamentary dispositions conditioned on surviving distribution are an accepted practice in California estate planning. That section provides, in part, that if any heir, devisee, or legatee survives the testator but dies prior to distribution, a decree of final distribution purporting to make a distribution to such person by name rather than to his personal representa-

---

[3]The Supreme Court of California in *In re Estate of Taylor*, 66 Cal. 2d 855, 428 P.2d 301, 59 Cal. Rptr. 437 (1967), adopted a rule to mitigate the harshness of the result in cases where a testamentary disposition is conditioned upon surviving distribution of the estate. The court acknowledged that survival until final distribution is normally a condition precedent to the vesting of the beneficiary's interest, but the court held that a distribution conditioned upon survival until "distribution of the estate" becomes indefeasibly vested upon the beneficiary's surviving the day distribution *ought* to have occurred rather than the day when the distribution actually occurred. 428 P.2d at 303, 59 Cal. Rptr. at 439. The rule of *Estate of Taylor* was subsequently considered in *In re Estate of Germond*, 4 Cal. 3d 573, 483 P.2d 769, 94 Cal. Rptr. 153 (1971), but in that case, the court found that the executor had not delayed final distribution of the estate unreasonably. However, neither *Estate of Germond* nor *Estate of Taylor* suggests that California courts would interpret such a disposition as vesting indefeasibly upon the beneficiary's surviving only the testator's death.

tive or estate shall have the same effect as though distribution had been made to him while living. However, the section further states that "where the share is purportedly distributed to him pursuant to the terms of a will which provides that he shall be entitled to the same only in the event he *survives the date of distribution*, then such purported distribution as to him shall be void." Cal. Prob. Code sec. 1023 (West 1981); emphasis added. Thus, California's probate scheme both anticipates and accommodates the use of a condition such as the one involved in the present case.

Although the technical meaning of the phrase "distribution of my estate" is well established, we must also consider the other circumstances surrounding the execution of Mrs. Harmon's will before we can determine the meaning of such phrase as used in her will. *In re Estate of Russell, supra.* Mr. Dougherty, the attorney who prepared the will, testified that, in his opinion, Mrs. Harmon meant "fails to survive my death" by use of the phrase "fails to survive distribution of my estate." Mr. Dougherty had "no recollection of her instructing me to impose any condition other than * * * [Mr. Harmon's] survival." Yet, he had no recollection that she specifically directed him to make the gift to Mr. Harmon subject only to his surviving her; nor could he explain why the technical phrase "fails to survive distribution of my estate" was used in paragraph "THIRD" when phrases that would have clearly expressed the decedent's purported intent (i.e., "should he predecease me," "if living at the time of my death," and "In the event that my said son * * * shall predecease me") were used in paragraphs "FOURTH," "FIFTH," and "SIXTH" of her will. Because of the passage of time between the execution of the will and the trial, Mr. Dougherty could not remember the exact manner in which the will was drafted. His best recollection was that he used Mrs. Harmon's June 1972 will as a form, making modifications on a copy of such will and then giving his secretary oral instructions as to the addition of the new provisions necessitated by Mrs. Harmon's altered intentions. The secretary would typically prepare such provisions with the aid of "form" wills, using language indicated by Mr. Dougherty.

Mr. Dougherty's testimony establishes at most that Mrs. Harmon could have intended that the bequest to Mr. Harmon

be contingent only upon his surviving her death, but his testimony does not conclusively prove that such was her intent. His opinion alone as to her intent is not sufficiently compelling in light of the fact that he supervised the preparation of the will and its use of the phrase "fails to survive distribution of my estate." It is difficult to believe that Mr. Dougherty, an experienced attorney, adopted such phrase thinking it expressed an intention different from its well established, technical meaning, particularly since he employed language which specifically conditioned other dispositions upon the beneficiary's surviving only Mrs. Harmon's death.

An examination of the remaining evidence of the circumstances surrounding the execution of Mrs. Harmon's will is similarly inconclusive as to her intent. At the time she executed her will, Mrs. Harmon was on good terms with her son, her husband, and her husband's children. In 1972, shortly after she married Mr. Harmon, Mrs. Harmon executed a will which left all of her estate to her son. However, in 1974, when she became concerned about the needs of her sister and her husband, she revoked such will and executed the will involved here. Mrs. Harmon informed her son that she had revoked the 1972 will and told him "I'm giving Sidney the condominium." The conversation with Mr. Bregman was brief, and there was no discussion of the condition contained in the disposition to Mr. Harmon. Mrs. Harmon likewise told Mr. Harmon that she had provided that he could stay on in the condominium after her death. Neither Mr. Bregman nor Mr. Harmon saw the will before her death. All that can be deduced from an examination of these extrinsic circumstances is that Mrs. Harmon wanted to insure that Mr. Harmon could live in the condominium after her death. Such purpose was effectuated by paragraph "THIRD" of her will regardless of whether we accept the petitioner's or the Commissioner's interpretation of its conditional language. These other circumstances are consequently of little assistance in divining Mrs. Harmon's intent.

We conclude that the petitioner has failed to prove that Mrs. Harmon intended the phrase "fails to survive distribution of my estate" to mean anything other than its understood meaning in California probate practice. Therefore, because the disposition contained in paragraph "THIRD" of the decedent's

will would have terminated or failed if her husband had not survived the issuance of the final decree of distribution, we hold that such disposition is a terminable interest within the meaning of section 2056(b) for which no marital deduction is available.

The result we reach is in accord with that of numerous estate tax cases where California law has been applied to a spousal disposition conditioned upon the spouse's surviving "distribution of * * * [the testator's] estate" (or a phrase of similar import). See *Mitchell v. United States*, an unreported case (C.D. Cal. 1971, 28 AFTR 2d 71–6209, 71–2 USTC par. 12,793); *Nielsen v. United States*, an unreported case (C.D. Cal. 1968, 22 AFTR 2d 6051, 68–2 USTC par. 12,549); *Farrell v. United States*, 198 F. Supp. 461 (S.D. Cal. 1961); *California Trust Co. v. Riddell*, 136 F. Supp. 7 (S.D. Cal. 1955); *Estate of Sbicca v. Commissioner*, 35 T.C. 96 (1960); *Estate of Street v. Commissioner*, 25 T.C. 673 (1955); see also sec. 20.2056(b)–3(d), example (4), Estate Tax Regs.; but see *Estate of Doughty v. United States*, an unreported case (C.D. Cal. 1969, 25 AFTR 2d 70–1451, 70–1 USTC par. 12,651).[4] The petitioner seeks to distinguish the cited cases, with the exception of *Farrell v. United States, supra*, on the ground that the language employed by the testator in each case more clearly indicated an intent to condition the disposition on survival of probate distribution than the words employed by the testator in the present case; in some of the cases, the will provided that the disposition would fail if the spouse "predeceased * * * [the testator], *or* does not survive distribution of * * * [the testator's] estate" (or words to that effect), while in the other cases the will provided that the disposition would fail if the spouse did not survive "the *decree of final distribution* of * * * [the testator's] estate" (or words to that effect) (emphasis added).

Although we agree that the testator's intent was more artfully expressed in the cited cases, we find that the same

---

[4]In *Estate of Doughty v. United States*, an unreported case (C.D. Cal. 1969, 25 AFTR 2d 70–1451, 70–1 USTC par. 12,651), the court allowed a marital deduction for a disposition very like the one involved in the present case. The court found as a fact that the testator used the words "survive distribution of my estate" to mean "the passing of title to such estate at the time of his decease," which was the equivalent of "fail to survive my death." However, *Estate of Doughty* is distinguishable from the present case. The will there involved was a holographic will, and in such a case, the presumption that the technical phrase "distribution of my estate" was used in its technical sense would not apply.

intent is expressed by the words utilized in paragraph "THIRD" of Mrs. Harmon's will. In *Farrell v. United States, supra,* the court denied a marital deduction for a spousal disposition containing the same survivorship condition as in the present case. While the court in *Farrell* did not consider whether the language used was ambiguous, the taxpayer's failure to raise the issue and the court's failure to consider it were quite likely due to the fact that the meaning of such a disposition *is* so clear in California. In several cases not involving the marital deduction, California State courts have interpreted dispositions very similar to the one here as creating an interest conditioned on surviving probate distribution, not just the testator's death. See *In re Estate of Germond, supra* (will provided for alternate gift in event that beneficiary died "prior to distribution to her of my estate"); *In re Jameson's Estate, supra* (will provided for alternate gift in event that beneficiary "does not survive distribution of my estate"); see also *In re Zuber's Estate,* 146 Cal. App. 2d 584, 304 P.2d 247 (Cal. Dist. Ct. App. 1956); *In re Hampe's Estate, supra.*

The petitioner has relied heavily on the court's reasoning in *Kellar v. Kasper,* 138 F. Supp. 738 (D.S.D. 1956), on remand from 217 F.2d 744 (8th Cir. 1954). In that case, the court applied South Dakota law to a testamentary disposition nearly identical to that of this case.[5] It determined first that the disposition to the surviving spouse vested immediately upon the testator's death because South Dakota law favors the early vesting of title. The court then turned to the question of whether the interest was subject to divestment, or termination, upon the occurrence of a subsequent event. After considering expert testimony from five eminent, South Dakota attorneys, the court concluded that the "divesting" language of the disposition, i.e., "if living at the time of the distribution of my estate," was ambiguous because it was fairly susceptible

---

[5] The will in *Kellar v. Kasper,* 138 F. Supp. 738, 739 (D.S.D. 1956), provided, in pertinent part:

"Item 2. I give and bequeath to my wife, * * *, if living at the time of the Distribution of my estate, the sum of One Hundred Thousand Dollars * * *."

\* \* \* \* \* \* \*

"Item 5. If living at time of the distribution of my estate, I give, devise and bequeath to my wife, * * *, one-third, and to my son, * * *, two-thirds of all the rest, residue and remainder of my property and estate * * *. If either my wife or my son dies prior to the distribution of my estate, * * * [the residue would pass to the survivor or other persons]."

of four different interpretations. Among such potential interpretations was "the 'distribution' effected by the law which occurs on the death of the testator." 138 F. Supp. at 743. Under South Dakota law, title to property, both real and personal, passes immediately to the heirs and beneficiaries upon the testator's death, subject only to the control of the county court for the purposes of administration, and a decree of distribution vests or grants no title, but merely releases the property from probate and confirms the title already passed to the heirs or beneficiaries. 138 F. Supp. at 741.

Having determined that the phrase "distribution of my estate" was ambiguous under South Dakota law, the court in *Kellar v. Kasper* resorted to extrinsic evidence of the circumstances surrounding the execution of the will in order to fathom the testator's intent. The testator, an "astute lawyer," himself drafted the will and revoked a prior will, which had given his wife a life estate in most of his property, for the sole purpose of taking advantage of the then recently enacted marital deduction. The court concluded that the testator intended by use of the phrase "distribution of my estate" to mean the passing of title to property which occurs at the time of a testator's death, and that consequently, the spouse acquired an indefeasibly vested interest at the time of the testator's death. Therefore, the marital deduction was allowed. 138 F. Supp. at 744.

The petitioner here also introduced expert testimony in an attempt to show that the disposition to Mr. Harmon was susceptible of several interpretations. Joan M. Sautter, a licensed attorney engaged in the practice of law in San Francisco, testified that the phrase "distribution of my estate" could mean (as in South Dakota) the passing of title to property which occurs at the time of the testator's death, subject only to probate administration.[6] It could also refer to

---

[6] Cal. Prob. Code sec. 300 (West 1956). That section provides:

"When a person dies, the title to his property, real and personal, passes to the person to whom it is devised or bequeathed by his last will, or, in the absence of such disposition, to the persons who succeed to his estate as provided in Division 2 of this code; but all of his property shall be subject to the possession of the executor or administrator and to the control of the superior court for the purposes of administration, sale or other disposition under the provisions of Division 3 of this code, and shall be chargeable with the expenses of administering his estate, and the payment of his debts and the allowance to the family, except as otherwise provided in this code."

the recording of a community property order,[7] a decree of preliminary distribution,[8] a decree of final distribution,[9] or the recording of a decree of final distribution. Concluding that the phrase was ambiguous, Ms. Sautter stated that an interpretation meaning "at the time of my death" would be most consistent with California policy. She testified that such policy favored the early vesting of estates and the indefeasibility of vested estates. However, Ms. Sautter neither referred to nor explained how her position was consistent with the numerous California cases, cited above, which have held that the phrase "distribution of my estate" means entry of the decree of distribution. With the exception perhaps of *Estate of Doughty v. United States, supra*,[10] none of the courts in those cases found the phrase to be ambiguous.

Furthermore, while it is true that California, like most States, favors the early vesting of estates in order to prevent violations of the rule against perpetuities (see Cal. Prob. Code sec. 28 (West 1956); *In re Stanford's Estate*, 49 Cal. 2d 120, 315 P.2d 681, 683 (1957)), California also recognizes that testamentary dispositions may be subject to conditions precedent which will delay vesting until the occurrence of the contingency. See Cal. Prob. Code sec. 142 (West 1956). California also recognizes that a testamentary disposition may create a vested interest subject to a condition subsequent, the occurrence of which will terminate the interest. Cal. Prob. Code sec. 143 (West 1956). In fact, most of the California cases which have dealt with dispositions similar to the one involved here have found that the disposition created an unvested, contingent interest. See, e.g., *In re Estate of Germond, supra*; *In re Estate of Taylor, supra*; *In re Jameson's Estate, supra*. However, in any event, it is unnecessary to turn to the general guidelines of California policy where numerous California cases establish the meaning of the condition.[11]

The circumstances surrounding the execution of Mrs. Harmon's will are also distinguishable from those that existed in

---

[7]Cal. Prob. Code sec. 655 (West Supp. 1984).

[8]Cal. Prob. Code sec. 1000 et seq. (West 1981).

[9]Cal. Prob. Code sec. 1020 et seq. (West 1981).

[10]See note 4 *supra*.

[11]We also observe that for purposes of the marital deduction, it is irrelevant whether the condition here is a condition precedent or a condition subsequent—in either event, it creates a nondeductible terminable interest.

*Kellar v. Kasper, supra.* In that case, the court was strongly influenced by the fact that the testator, a lawyer, drew up his new will, altering his estate plan, for the sole purpose of obtaining the marital deduction. The court presumed that, as an astute lawyer, he would understand the requirements for obtaining the deduction and would utilize language which he believed expressed that intention. In the present case, there is no evidence whatsoever that the decedent was seeking a marital deduction. Under a prior will, executed after she married Mr. Harmon, the decedent had left all of her estate to her son. She subsequently revoked that will and executed the will involved here, but even under this will, the bulk of her estate would still pass to her son. Mrs. Harmon altered her will in order to provide Mr. Harmon with a place to live, but that intent is in no way inconsistent with a desire to give her condominium and its contents to her son if Mr. Harmon were to die within the period of probate administration. Conceivably, Mrs. Harmon felt that the property should pass to whomever Mr. Harmon chose only if he lived long enough to use and enjoy it.

Because of other adjustments,

*Decision will be entered under Rule 155.*